UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**LORI APPLEGATE**,                                Civil Case No. 3:13-CV-02295-KI

        Plaintiff,

                                  OPINION AND ORDER

            v.

**COMMISSIONER SOCIAL SECURITY
ADMINISTRATION**,

        Defendant.

      Bruce W. Brewer
      Law Offices of Bruce W. Brewer, PC
      P. O. Box 421
      West Linn, OR 97068

           Attorney for Plaintiff

      S. Amanda Marshall
      United States Attorney
      District of Oregon

Page 1 - OPINION AND ORDER

Ronald K. Silver
Adrian L. Brown
United States Attorney's Office
1000 SW Third Ave., Suite 600
Portland, Oregon  97204-2902

Jordan D. Goddard
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

KING, Judge:

Plaintiff Lori Applegate brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB").  I reverse the decision of the Commissioner and remand for further proceedings.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI ("Supplemental Security Income") due to disability. The evaluation is carried out by the Administrative Law Judge ("ALJ"). The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the

claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, the ALJ makes a finding of "not disabled" and disability benefits are denied. 20 C.F.R. §§ 404.1520(e), 416.920(e).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is unable to perform other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. Id. (internal quotation omitted). The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. Id.

## THE ALJ'S DECISION

The ALJ found Applegate has severe impairments of degenerative disc disease, mild scoliosis, arthritis, bursitis, and fibromyalgia. The ALJ also found that these impairments, either singly or in combination, are not severe enough to meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. After reviewing the

record, the ALJ found Applegate has the residual functional capacity to perform light work with some additional limitations: she can stand and walk a total of four hours out of eight; she cannot climb ladders, ropes, and scaffolds; she can occasionally climb ramps and stairs; she can occasionally stoop, kneel, crawl, and crouch; she can only have occasional exposure to hazards; and she must be allowed to change between sitting and standing approximately every hour at the work station. Based on vocational expert ("VE") testimony, the ALJ found Applegate can work as a food assembler, print circuit board assembler, and wiring harness assembler and, thus, is not disabled under the Act.

## FACTS

Applegate alleges she became disabled on August 15, 2009, when she was 51 years old. She is a high school graduate and took a year of college classes. Applegate has 13 years of experience as a press operator.

Applegate suffers from pain throughout her legs, back, neck, shoulders, and arms. She has to lie down and rest for 30 minutes after 10 to 20 minutes of activity; she can sit for 20 to 30 minutes before having to get up; she can walk for three to five minutes before resting; she can lift a gallon of milk or a small pot of water with difficulty; she can do household chores for 10 minutes at a time. Applegate often walks with a cane or uses a shopping cart for support. She uses narcotic pain medication, including fentanyl patches combined with Percocet or oxycodone. The medication makes her tired and causes her to nap for a couple of hours during the daytime. Her doctors have not suggested surgery. She tried physical therapy years ago without success and has had steroid injections in her hip and shoulder, also without success.

Applegate lives with her husband. She shops three times a week for small items and gets help from her daughter to buy large amounts of groceries.

## DISCUSSION

I.   Applegate's Subjective Symptom Testimony

Applegate contends the ALJ erred by failing to give clear and convincing reasons to reject her subjective symptom testimony. The Commissioner defends the ALJ's analysis.

> In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. If the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.

Molina, 674 F.3d at 1112 (internal quotations and citations omitted).

The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." Holahan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient to support an adverse credibility determination, and the ALJ must rely on substantial evidence. Id.

The ALJ concluded Applegate had limited credibility for several reasons. First, the ALJ reasoned Applegate's daily activities show she is not as limited as alleged. The ALJ reviewed evidence Applegate can perform household chores for an hour a day with breaks, shops for 30 to 90 minutes a week, sews, does puzzles, and cares for her pets. This is in contrast to the ALJ's summary of Applegate's testimony that she could sit 20 to 30 minutes at once, stand 10 to 20

minutes at a time, and walk five minutes at a time. The ALJ has adequately specified which activities are inconsistent with which allegations.

The ALJ also contrasted Applegate's testimony that she could barely lift a pot of water with her statement that she can carry groceries. Plaintiff's counsel argues the ALJ cannot rationally make this comparison without knowing the relative weight of each item, conjecturing the pot of water, which Applegate testified was a "small pot of water" used when cooking, Tr. 47, might actually be a grab pot containing 50 gallons of water. Pl.'s Opening Br. 14. There is sufficient context in the testimony for the ALJ to make a reasonable comparison of the two items.

To sum up, the inconsistency between Applegate's daily activities and her symptom testimony is a clear and convincing reason to discount her credibility.

Next, the ALJ noted Applegate only received conservative medical treatment. A conservative course of treatment undermines a claimant's allegations of debilitating pain unless the claimant has a good reason for not getting more aggressive treatment. Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008). Applegate argues the massive dose of narcotics her primary care physician prescribed is not conservative treatment and, moreover, no other treatments were offered. The fact that a claimant's symptoms are not severe enough to motivate her to seek other forms of treatment, even if some treatment is underway, "is powerful evidence regarding the extent" of the symptom. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (claimant took Tylenol with codeine but her treating physicians had not recommended surgery, physical therapy, chiropractic treatment, or home exercise for the back pain). There is no evidence Applegate even inquired about other alternatives.

Page 7 - OPINION AND ORDER

Similarly, the ALJ also noted the long periods of time between doctor appointments, in spite of Applegate's allegations of disabling pain. She was examined on August 2, 2011 by a Kaiser physician for a consultation about medical management for chronic pain; she was a no show for an appointment on September 20, 2011; and she was examined by her Kaiser primary care physician on April 10, 2012. Large, unexplained gaps in medical treatment suggest the symptoms are "not especially troublesome." Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007).

These facts are substantial evidence supporting the ALJ's analysis. I find the ALJ provided a clear and convincing reason in concluding Applegate only received conservative medical treatment.

Next, the ALJ noted no treating or examining physician opined Applegate is disabled or has more limitations than those the ALJ included in the residual functional capacity. The record supports this observation. Applegate argues Kaiser doctors refuse to provide medico-legal reports, but I note her primary care physician, Dr. Tamashiro, specified limitations in a chart note dated February 12, 2009, prior to her resignation from her last job, and completed a work requirement report for Applegate to take to her employer which stated: push only occasionally over 100 pounds or infrequently and occasionally push and pull objects of 50 pounds, sit and stand for eight hours at a time. Tr. 239. I am aware of no limitations in her Kaiser medical record which exceed the ALJ's residual functional capacity. Moreover, examining physician Dr. Hwee and state disability nonexamining physician Dr. Eder both put less restrictions on Applegate than assessed by the ALJ in the residual functional capacity. Drs. Hwee and Eder both opined Applegate could stand and/or walk for six hours in an eight-hour day. Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective

Page 8 - OPINION AND ORDER

medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Thus, the lack of greater limitations in the medical record is another clear and convincing reason to discredit Applegate.

Finally the ALJ noted Applegate has a history of stopping medications on her own and failing to attend a pain class after her physician agreed to waive the fee. I agree with Applegate there is no evidence the physician was successful in his attempt to get the fee waived. Thus, this reason is not a clear and convincing one.

The record does support, however, the ALJ's finding that Applegate would stop and start her medication for high cholesterol and depression at will and without explanation. An unexplained failure to seek treatment or to follow a prescribed course of treatment is a credibility factor. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). Applegate's failure to follow her doctor's advice in spite of her allegations of disabling symptoms is a clear and convincing reason to doubt her credibility.

In sum, the ALJ gave one improper reason and several clear and convincing reasons to discredit Applegate. The fact that the ALJ improperly considered some reasons for finding plaintiff's credibility undermined does not mean the ALJ's entire credibility assessment is improper. If there is substantial evidence supporting the ALJ's conclusion on credibility, and "the error does not negate the validity of the ALJ's ultimate [credibility] conclusion, the error is harmless." Carmickle, 533 F.3d at 1162 (internal quotation omitted). In light of the number of clear and convincing reasons given, I find the single error harmless. Accordingly, the ALJ did not err in finding Applegate less than credible.

    II.     <u>Lay Testimony</u>

        Applegate argues the ALJ improperly rejected the statement from her husband, Daryl Applegate. The Commissioner contends none of the husband's statements about Applegate's symptoms implicate limitations not included in the residual functional capacity.

        Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. <u>Molina</u>, 674 F.3d at 1114. The germane reasons must be specific. <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1115 (9th Cir. 2009). A legitimate reason to discount lay testimony is that it conflicts with medical evidence. <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1218 (9th Cir. 2005). But the ALJ cannot discredit lay testimony because it is not supported by, or corroborated by, medical evidence in the record. <u>Bruce</u>, 557 F.3d at 1116.

        The husband completed a questionnaire on November 12, 2010 in which he explained: (1) Applegate experiences intense pain whenever she uses her muscles; (2) the narcotic pain medication makes her sleepy and puts her in an altered state not conducive to a work environment; (3) her sleep is sporadic but she will fall asleep anytime, anywhere; (4) it takes her a long time to complete a task and she cannot stand for long; (5) Applegate does small chores around the house–including dishes, laundry, and cleaning–but the house is still a mess; (6) she makes simple meals and goes shopping three times a week, although the trips take longer than usual; (7) she listens to the radio, watches television, reads and does puzzles, and they have people over for dinner occasionally but she no longer takes walks or goes fishing; and (8) she follows instructions without problems. Generally, the husband reports he cannot believe how much Applegate has deteriorated during their 13-year marriage.

Page 10 - OPINION AND ORDER

The ALJ concluded the husband's statement was credible to the extent he based it on personal observation and described activities consistent with the residual functional capacity.

I cannot agree that the husband's description of the intensity of Applegate's pain, her sleepiness, and her slow speed in completing tasks are consistent with the residual functional capacity. Thus, the ALJ has commented on the husband's testimony but has not given a germane reason for failing to include all the limitations which the testimony supports. I do agree with the Commissioner, however, that the husband did not describe symptoms which differ from his wife's testimony.

If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ only has to refer to those reasons when rejecting similar testimony by a different witness. Molina, 674 F.3d at 1114. Here, the ALJ properly rejected Applegate's testimony, but the ALJ did not refer to that analysis to reject the husband's testimony also. So, I must determine if that error is harmless.

An ALJ's error is harmless if it was "inconsequential to the ultimate nondisability determination." Id. at 1115. The court must look to the entire record to determine whether the error changes the outcome of the case. Id. An ALJ's failure to comment on lay witness testimony "is harmless where the same evidence the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims." Id. at 1122 (internal quotation omitted).

That is the case here–the ALJ gave legally sufficient reasons to reject Applegate's testimony. If he had referred to those reasons to reject the husband's testimony, which did not

differ significantly from Applegate's, the ALJ would have given germane reasons to reject the husband's testimony. Consequently, the error is harmless.

II.     Vocational Issues

Applegate raises several issues concerning the VE testimony, the need to identify transferable skills, and use of the Medical Vocational Guidelines.

     A.     VE Testimony and the Dictionary of Occupational Titles ("DOT")

Applegate contends the ALJ erred by relying on VE testimony when the VE did not explain why the testimony diverged from the DOT. She notes the ALJ's residual functional capacity limited her to light work with several additional limitations, including standing and walking four hours a day and changing between sitting and standing approximately every hour. In contrast, light jobs require six hours of walking or standing. SSR 83-10. According to Applegate, when the VE testified she could perform several light jobs but did not testify about a reduced number of the jobs available which met the residual functional capacity limitations, the VE diverged from the DOT.

The Commissioner claims the VE provided testimony consistent with the DOT. According to the Commissioner, the VE responded to the ALJ's residual functional capacity by identifying light jobs that require standing only four hours a day. The Commissioner also notes the DOT does not identify what light jobs have a sit/stand option so there can be no conflict between the DOT and the VE's testimony.

At the hearing, the ALJ gave the VE a hypothetical using an individual able to perform the full range of light work with some postural and environmental limitations. The VE testified the individual could not perform Applegate's past work as a press operator. The ALJ asked if

Page 12 - OPINION AND ORDER

there are additional jobs in the national economy the individual could perform. The VE responded with the three jobs of food assembler, printed circuit board assembler, and wiring harness assembler. The ALJ then asked:

> Q      Thank you. Now, for a second hypothetical I'd like to keep all of the restriction[s] as in the first, and in addition the person would be limited to four hours of standing and walking–standing and/or walking and–well, let's just go with that. So would that change any of the three jobs that you identified in the previous hypothetical?
>
> A      No, your honor.
>
> Q      So those three jobs could be performed at the four-hour stand/walk limitation?
>
> A      Yes.
>
> Q      Okay. Now, for a third hypothetical I'd like to keep all of the restrictions as in the second, and in addition the individual must be permitted to change his or her position from standing to sitting or from sitting to standing approximately every hour at will but remaining at the work station. Would that preclude any of the three jobs that you previously identified?
>
> A      How long would that maneuver take, approximately, in your hypothetical?
>
> Q      Only as long as it would take to actually change positions. So generally 30 seconds, 45 seconds?
>
> A      My answer would remain the same, your honor.
>
> . . . .
>
> Q      And has your testimony here today been consistent with the dictionary of Occupational Titles?
>
> A      It has, your honor.

Tr. 58-59.

Page 13 - OPINION AND ORDER

An ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first asking if the testimony conflicts with the DOT.  Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007).  Because the DOT does not specify information about sit/stand options, the VE testimony that the three jobs meet the hypothetical with this additional limitation cannot be inconsistent with the DOT.  The ALJ may rely on the VE's testimony concerning the sit/stand options because the VE's recognized expertise provides the necessary foundation for his testimony.  Bayliss, 427 F.3d at 1218.  The ALJ did not err concerning the sit/stand option.

The VE's testimony that the three jobs could be performed with the four-hour stand/walk limitation is inconsistent with the DOT, however, because the DOT classifies them as light jobs requiring six hours of standing/walking.  The DOT raises a presumption about the job classification but the presumption is rebuttable.  The ALJ may rely on expert testimony which contradicts the DOT if the record contains persuasive evidence to support the differences.  Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).  In Johnson, the VE "testified specifically about the characteristics of local jobs when he described the 30,000 office helper and production assembler jobs existing in the Los Angeles County area and found their characteristics to be sedentary."  Id.  In contrast, the VE at Applegate's hearing gave no supporting information to justify his statement that the three light jobs could be performed with a four-hour stand/walk limitation instead of six.  A two-hour deviation is significant and required explanation.  With nothing to support the statement, I find that the record fails to contain persuasive evidence to support this deviation from the DOT.  Consequently, the ALJ erred by

relying on VE testimony when the VE did not explain why the testimony diverged from the DOT concerning the amount of standing/walking in the jobs at issue.

      B.    <u>Transferable Skills and Use of the Medical Vocational Guidelines</u>

Applegate argues she cannot perform the jobs identified by the VE because they are all semiskilled jobs and the ALJ did not identify which skills she had that could be transferable to them. Applegate also claims the ALJ erred in suggesting the Medical Vocational Guidelines provide a framework for a finding that she is not disabled in light of the limitations to light work the ALJ included in her residual functional capacity.

The Commissioner contends the ALJ properly determined that transferability of job skills was not material to the disability determination in this case because the Medical Vocational Guidelines corresponding to Applegate's situation direct a decision of "not disabled" whether or not she had transferable skills.

SSR 82-41 states, in relevant part: "When the issue of skills and their transferability *must be decided*, the adjudicator or ALJ is required to make certain findings of fact and include them in the written decision. Findings should be supported with appropriate documentation." (emphasis added).

The Medical Vocational Guidelines are used to determine if substantial gainful work exists for claimants with substantially uniform levels of impairment. When the grids do not adequately take into account a claimant's abilities and limitations, however, they may be used only as a framework and a vocational expert must be consulted. <u>Thomas v. Barnhart</u>, 278 F.3d 947, 960 (9th Cir. 2002). The Medical Vocational Guidelines

Page 15 - OPINION AND ORDER

>  categorize jobs by their physical-exertional requirements, and set forth a table for
> each category. A claimant's placement with the appropriate table is determined by
> applying a matrix of four factors identified by Congress–a claimant's age,
> education, previous work experience, and physical ability.  For each combination
> of these factors, they direct a finding of either "disabled" or "not disabled" based
> on the number of jobs in the national economy in that category of
> physical-exertional requirements.

Lounsburry v. Barnhart, 468 F.3d 1111, 1114-15 (9th Cir. 2006).

The ALJ realized the Medical Vocational Guidelines could only be used as a framework because Applegate did not have the residual functional capacity to perform the full range of light work.  This complies with the law as stated in Thomas.

The ALJ concluded the transferability of job skills is not material to the determination of disability because the Medical Vocational Guidelines direct a finding of "not disabled" whether or not Applegate has transferable job skills.  This statement is true and is based on Rules 202.14 (light work; closely approaching advanced age; high school graduate or more; skills not transferable) and 202.15 (same but skills are transferable).

Applegate relies on Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219 (9th Cir. 2009), which held the ALJ erred by finding the claimant had transferable skills but failed to articulate a clear basis for the assumption, contrary to SSR 82-41.  Id. at 1229.  In Bray, however, the issue of transferability of skills was dispositive because the claimant was of advanced age and, under the Medical Vocational Guidelines, she would be found disabled *unless* she had readily transferable skills.  Id. at 1229 n.9.  That is not the case here–Applegate is "not disabled" under the Medical Vocational Guidelines whether or not she has transferable skills.  Thus, under SSR 82-41, the issue of transferability of skills does not need to be decided and written findings are not required.  The ALJ did not err.

III.    Remedy

The ALJ erred by relying on VE testimony which diverged without explanation from the DOT concerning the amount of standing/walking in the jobs at issue.

The court has the discretion to remand the case for additional evidence and findings or to award benefits. The court can award benefits "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." Brewes v. Comm'r Soc. Sec. Admin., 682 F.3d 1157, 1164 (9th Cir. 2012) (internal quotation omitted).

The record is not fully developed because a VE may be able to explain persuasively the divergence from the DOT or, alternatively, may be able to specify other jobs which meet the residual functional capacity. Accordingly, I will remand for rehearing.

## CONCLUSION

The decision of the Commissioner is reversed. This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above. Judgment will be entered.

IT IS SO ORDERED.

Dated this    22nd    day of April, 2015.

          /s/ Garr M. King
          Garr M. King
          United States District Judge